# EXHIBIT

# #F

An official website of the United States government
Here's how you know

Frequently Asked Questions   Contact Us   Careers   Transcripts   Directory



Federal Law Enforcement Training Centers

Search

Students   State, Local & Tribal   International   Participating Organizations   Public

# Territorial Jurisdiction on Federal Property (transcript)

Home

Solari: Welcome to the next in our series of podcasts. I'm Jenna Solari, a senior instructor in the FLETC Legal Division, and with me today is another senior instructor in Legal Division, Steve Perry. Today, we are going to be discussing the exercising of federal law enforcement authority on government property, and also the ways in which federal ownership of land or property may affect federal law enforcement authority on those lands. Steve is our resident expert here, so Steve if you could tell our listeners a little bit about yourself.

Perry: Thanks Jenna. I've been in law enforcement for 34 years now. Most relevant to what this little podcast is about is my experience as a federal law enforcement officer with the U.S. Forest Service. I worked in Idaho, Montana, and various other states both as a uniformed officer and as an agent. About four years ago I took a job as a regional chief and spent three years up in Alaska with the U.S. Fish & Wildlife Service.

Solari: Great, well tell us: why is knowledge of the types of ownership of federal lands important to knowing what federal law enforcement actions can be taken there?

Perry: It all starts with the United States Constitution. Everyone in federal law enforcement knows that there must be a connection between the offense and the federal government, a nexus we call it, for federal law enforcement to take action. The vast majority of law enforcement work is done by state and local police, and has always been so.

Solari: So then the issue then is, when does a federal nexus, or a federal connection, create a need for federal law enforcement on a particular piece of federal property?

Perry: Correct. And federal land has certain territorial jurisdiction aspects.

Solari: Well, and what types of federal property are there?

Perry: Originally, there were relatively few pieces of federal property to be concerned about, a few forts, arsenals, post offices and federal buildings in large cities. There were always large tracts of undeveloped public lands in the western United States, and of course large areas of Indian country lands. But the United States government was land-rich, and it encouraged westward expansion for over a hundred years by giving away and cheaply selling federal lands. Originally, little federal law enforcement took place.

Solari: What happened as the population began to move westward?

Perry: As the population moved, states often gave land to the United States to encourage development of new federal military installations, post offices, veteran's hospitals, research facilities, forests, refuges, parks. The government also purchased lands as needed for facilities and federal courthouses and other buildings. In the late 1800s, the government began protecting the remaining pieces of federal lands, often removing them entirely from further development.

Solari: So how much land are we really talking about today? What does the U.S. Government own as far as land and buildings?

Perry: The U.S. owns more than you might think. In 2004 the General Services Administration estimated the United States government owns almost 30% of all land in the United States; that's around 670 million acres of land in the United States, plus another 1 million acres owned outside the country. The U.S. government also owns over 432,000 buildings and leases another 42,000 buildings.

Solari: Well, clearly there's no way the federal government can provide law enforcement services for all that property, those buildings and all that land.

Perry: No, and it was never intended that the United States do so. Remember that well over 90% of all law enforcement today is handled by state and local authorities. Federal officers and agents investigate and prosecute a very small percentage of criminal justice activity in the United States.

Solari: Is there a legal standard for determining the appropriate federal law enforcement support for all these properties and buildings?

Perry: Over time, there has come to be three general categories of federal land ownership. How much federal law enforcement is done, if in fact any is done at all, depends on what category of federal land we are talking about.

Solari: Well, let's start off with the largest category, which one's that?

Perry: The largest percentage of federal land is held in a category known as proprietary jurisdiction.

Solari: Well based on the name, sounds to me like that must mean Uncle Sam acts like a normal proprietor -- a property owner -- would act.

Perry: That's mostly correct. When the ownership of a piece of land, government land, is considered proprietary, the government is said to have taken over none of the state's obligations for law enforcement. In other words, state and local law enforcement officers still handle calls for service as if the land were privately

owned. The sheriff or city police will respond and they'll handle calls without regard to the property's ownership.

Solari: But realistically, the U.S. government's not really like a private landowner. I mean private landowners don't have their own legislative branch to make laws and regulations, for example. They don't have their own court systems.

Perry: Absolutely right. The Property Clause of the United States Constitution gives Congress the authority to make and enforce all necessary rules and regulations to protect federal property, including property that is held in proprietary jurisdiction status.

Solari: Well can you give us an example?

Perry: Millions of acres of national forest lands are considered to be proprietary jurisdiction. To help protect the valuable national resources found within, Congress has given the Department of Agriculture, through the U.S. Forest Service, power to enact regulations to control use and protect those national forest lands. There are laws found in the Code of Federal Regulations that require visitors to national forests to obey standard rules of behavior, for example to avoid damaging public property, and to get permits before taking or altering any natural features found in the forest.

Solari: But those Forest Service laws found in the Code of Federal Regulations, the CFR, can then only apply to the national forests? They don't apply anywhere else?

Perry: Generally, they apply only to national forest lands. However, sometimes activities occurring outside a national forest may interfere with the adjacent forest. A common example is a wildfire starting outside a national forest on private property. It may eventually burn onto United States land and damage U.S. property. In that case, the Forest Service regulations may apply and the person responsible for letting that fire escape will be prosecuted in federal court.

Solari: Ok, well and of course, a private landlord can't create his own police force to enforce the special rules or regulations that he created for his private property.

Perry: Unlike a private landlord, Congress has the authority to create law enforcement organizations to patrol and to protect areas of federal property. Violations occurring within the federal land will then be handled by a federal law enforcement officer. This occurs on many of our land management areas, national parks, national refuges and forests, and BLM lands, as well as in developed areas and federal buildings protected and patrolled by many of our federal police agencies. Many of them have their own CFR regulations that are enforced within their property.

Solari: Ok, so that's proprietary jurisdiction. What are the other two categories of jurisdiction under which the government owns land?

- Perry: The United States can also own land under either exclusive or concurrent legislative jurisdiction. These categories are basically self-explanatory. If land is owned exclusively, the federal government takes over all the law enforcement responsibilities. Federal officers and agents are responsible for handling all investigations and cases, and the local police do not come onto the facility to investigate or arrest suspects.

The only power the non law enforcement officers would have in an area of exclusive jurisdiction would be to serve process, in other words, summons or subpoenas.

Solari: Alright, so state and locals then could come onto that piece of property that has exclusive jurisdiction to serve summons and subpoenas.

Perry: That's correct.

Solari: Ok. So the remainder of all of the law enforcement work done in that jurisdiction then would now be the responsibility of the federal government alone?

Perry: Yes. And that can be a real disadvantage if the agency lacks law enforcement resources to handle the crimes occurring there. Most of the federal property owned in the 1800s was held in exclusive jurisdiction. Today, it is probably the category with the fewest number of properties. However, military installations, federal buildings, post offices, and some other high value or security sensitive sites continue to be held in exclusive jurisdiction.

Solari: So then what is the third category of jurisdiction?

Perry: Concurrent legislative jurisdiction is the third type. It is considered partial jurisdiction because the federal government shares law enforcement responsibilities with the state and the local officers. In other words, should a crime occur on area owned concurrently with the state, either a federal law enforcement agency or a state or local law enforcement agency can respond, they can investigate, arrest and charge the suspect. If the federal officer or agent handles the case, that suspect will be tried in federal court. If arrested and charged by a state or local officer, the case will instead go to state or local court.

Solari: Well it seems like this category, concurrent jurisdiction, gives the federal law enforcement officer or agent the most options.

Perry: That's true. Many federal law enforcement agencies prefer to have concurrent jurisdiction on their lands, because they can share the workload, so to speak, with the state and local officers. However, concurrent jurisdiction brings other non-law enforcement responsibilities to that agency as well, and some agencies prefer to keep their properties held as proprietary jurisdiction.

Solari: That makes sense. Now Steve, I've heard the term "Special Maritime & Territorial Jurisdiction", or sometimes called SMTJ. I hear that used. Is that the same as what we're talking about here?

Perry: Not exactly the same thing. Exclusive jurisdiction and concurrent jurisdiction are included within the term Special Maritime & Territorial Jurisdiction, or SMTJ. That is a statute, 18 United States Code Section 7, that lists areas of federal jurisdiction for which certain crimes may be prosecuted.

Solari: So let's assume that a crime has occurred in an area of exclusive jurisdiction. So only federal law applies, and only a federal officer or agent can handle the case. But let's say the behavior, the offense that's occurring at the scene, doesn't have a federal statute to cover it. You're telling me we can't call in the state or local officers to handle it. So what do we do now?

Perry: Well that's a good question. Congress, long ago solved that problem, partially, and created a statute: Title 18 United States Code Section 13, that allows the officer or agent to assimilate an applicable state law under those circumstances. We know it as the Assimilative Crimes Act, it allows a federal officer who lacks an appropriate federal charge to use an appropriate state law in federal court. The charge is brought in the federal court, it's tried in the federal court, and if convicted the defendant does time in federal prison. The limitation on assimilative crimes is that if there is a federal statute covering the offense, that federal statute must be used. The officer can not shop between the jurisdictions to get the best charge in this case.

Solari: Alright. Well does the Assimilative Crimes Act work for concurrent and for proprietary jurisdiction also?

Perry: By definition, it does work, but only in the areas of exclusive or concurrent jurisdiction. It can not be used in areas of proprietary jurisdiction.

Solari: One last question: how would a person who has newly arrived at his or her duty station, find out which category he or she is working in?

Perry: The agency should always know how it legally holds all of its property. Often, there is no dispute about the ownership, and all lands are the same type. Other places may have a mixture of types. I know of national parks, forests and military installations in this country where some of the land is concurrent and nearby land across the road, purchased at a later date for example may be proprietary. There's even the potential for having all three types of jurisdiction within one federal installation. It's a question every officer and agent should ask when arriving at an unfamiliar area.

Solari: Well I'm glad you've put us on notice of this issue, Steve, because it seems like it could create a pretty sticky issue, depending on where an agent or officer finds him or herself once they get on the job. So thank you very much, Steve, for helping us out with this issue today.

Perry: You're welcome.

Solari: For those of you who want to hear more of our podcasts, you can find them online at www.fletc.gov/legal/podcasts.

Return to top

Home    Training    Locations    Resources    News    About

Federal Law Enforcement Training Centers

FLETC Contact Center

(912) 267-2447    fletc-webmaster@dhs.gov

For the Public    Accessibility    Accountability    Privacy    FOIA    No Fear Act    Plain Writing    Plug-ins

| Inspector General | The White House | USA.gov | Sitemap |

Headquarters - Glynco Center
1131 Chapel Crossing Road
Glynco, GA 31524
(912) 267-2100

Artesia Center
1300 W. Richey Avenue
Artesia, NM 88210
(575) 748-8000

Charleston Center
2000 Bainbridge Avenue
North Charleston, SC 29405
(843) 566-8551

Cheltenham Center
9000 Commo Road
Cheltenham, MD 20588
(301) 868-5830